**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**

|  |  |  |
|---|---|---|
| **GABRIEL HERNANDEZ, individually and on behalf of all persons similarly situated,** | : : : | **Civil Action No.: 5:21-cv-1174** |
|  | : | **Complaint — Collective Action** |
| **Plaintiff,** | : : | **Jury Trial Demanded** |
| **v.** | : : |  |
| **SER ENTERPRISES, INC. and DHL EXPRESS (USA) INC. d.b.a. DHL EXPRESS,** | : : : : |  |
| **Defendants.** | : : |  |

## COLLECTIVE ACTION COMPLAINT

Plaintiff Gabriel Hernandez ("Plaintiff"), through his undersigned counsel, individually, and on behalf of all persons similarly situated, files this Collective Action Complaint ("Complaint") against Defendants SER Enterprises, Inc. ("SER") and DHL Express (USA) Inc. d.b.a. DHL Express ("DHL") (collectively, "Defendants") seeking all available remedies under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*.

Plaintiff asserts his FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b). The following allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to the acts of others:

## INTRODUCTION

1.     Defendant SER provides last-mile delivery services to Defendant DHL. SER employs Courier Drivers – such as Plaintiff and the proposed Collective – to deliver packages to DHL's customers.

2.     This case is about Defendants' failure to comply with applicable wage laws and to

pay its non-exempt Courier Drivers for all time worked – including overtime – as required to meet DHL's delivery needs and deliver hundreds of DHL packages each day.

## JURISDICTION AND VENUE

3.      Jurisdiction over Plaintiff's FLSA claim is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

4.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391. Defendants reside and conduct business in this judicial District and Division, and a substantial part of the events giving rise to Plaintiff's and Collective Members' claims occurred within this judicial District and Division.

## PARTIES

5.      Plaintiff Gabriel Hernandez is a citizen of Texas and resides in San Antonio, Texas. Plaintiff Hernandez worked for Defendants as a Courier Driver in Texas from approximately April 2018 to August 2019. Pursuant to 29 U.S.C. § 216(b), Plaintiff Hernandez has consented to be a plaintiff in this action. *See* Ex. A.

6.      Defendant SER Enterprises, Inc. ("SER") is a registered Texas corporation, with its corporate office in San Antonio, Texas.

7.      Defendant DHL Express (USA) Inc. d.b.a. DHL Express ("DHL") is an Ohio corporation and is headquartered at DHL's corporate office in Plantation, FL. DHL maintains facilities across Texas including, without limitation, locations in San Antonio, Austin, and Houston.

8.      During times relevant, Defendants SER and DHL operated as business partners and acted as joint employers with respect to the Courier Drivers who delivered DHL's packages.

9.      Defendant SER employs Courier Drivers, such as Plaintiff, to deliver packages to DHL customers.

10.     At all times material to this action, Defendants have been engaged in commerce or in the production of goods for commerce as defined by the FLSA. Defendants' employees are engaged in interstate commerce and handle goods that have been moved in and/or produced in commerce.

11.     Defendants' annual gross volume of sales made and/or business done exceeds $500,000.

12.     The unlawful acts alleged in this Complaint were committed by Defendants and/or their officers, agents, employees, or representatives, while actively engaged in the management of Defendants' businesses or affairs and with the authorization of Defendants.

13.     During times relevant, Plaintiff was an employee of Defendants and is covered by the FLSA.

14.     During all times relevant, Defendants are employers and/or enterprises covered by the FLSA.

15.     Defendants employ individuals in Texas and potentially in other states.

## COLLECTIVE DEFINITION

16.     Plaintiff Hernandez brings Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action on behalf of himself and the following collective:

> All current and former courier drivers or delivery drivers who were paid by Defendants to deliver packages for DHL in the United States during the applicable limitations period (the "FLSA Collective" or "Courier Drivers").

17.     Plaintiff reserves the right to redefine the Collective prior to notice or collective certification, and thereafter, as may be warranted or necessary.

## FACTS

### Defendants Are Joint Employers Who Employed Plaintiff and the Courier Drivers

18.     Defendant DHL is the world's leading logistics company, with a team of shipping professionals that transport goods to customers across the United States, as well as in other countries and territories, in a short period of time.

19.     Defendant DHL holds itself out as a company able to provide domestic and international parcel pickup, delivery, and return solutions for business customers and individual customers, as well as e-commerce solutions and facilitation services.

20.     Defendant DHL utilizes and relies on local and regional delivery vendors, such as Defendant SER, for the essential services of transporting goods across the country from DHL facilities to DHL customers' doors in a short period of time.

21.     Defendant DHL and the local and regional delivery vendors it partners with, such as Defendant SER, are in the business of delivering goods across the United States.

22.     Defendant DHL attempts to shield itself from liability by utilizing third-party delivery vendors, such as Defendant SER, to provide the employees to transport their goods.

23.     Defendant SER provides delivery services for Defendant DHL at one or more of DHL's ServicePoint locations through and by the use of Courier Drivers such as Plaintiff and members of the proposed Collective.

24.     Courier Drivers, such as Plaintiff and members of the proposed Collective, are engaged to fulfill DHL's delivery needs and to transport goods from DHL ServicePoint locations to DHL customers.

25.     The goods that Courier Drivers transport from DHL ServicePoint locations to DHL customers originate, or are transformed into their final condition, in a different state than the

delivery state.

26.     The goods the Courier Drivers transport from DHL ServicePoint locations to DHL customers are not transformed or modified during the shipping process.

27.     Courier Drivers deliver goods to DHL customers in the same condition as when they were shipped to the DHL ServicePoint.

28.     Courier Drivers deliver goods to DHL customers that were shipped from around the United States.

29.     Courier Drivers handle goods that travel interstate.

30.     Courier Drivers operate vehicles in order to deliver DHL packages, which is vital to the commercial enterprise of the local and regional delivery vendors and DHL.

31.     A strike by Courier Drivers, such as Plaintiff and members of the proposed Collective, would disrupt interstate commerce. Plaintiff and other Courier Drivers are necessary in order for interstate goods to make it from DHL ServicePoint locations to their final destination – DHL customers.

32.     Courier Drivers, such as Plaintiff and members of the proposed Collective, work in the transportation industry.

33.     Plaintiff and other Courier Drivers are not required to have a commercial driver's license as a condition of employment.

34.     Plaintiff and other Courier Drivers drive vehicles that weigh less than 10,001 pounds.

35.     The local and regional delivery vendors, such as Defendant SER, operate courier and logistics businesses in providing vehicles and drivers to deliver goods on behalf of DHL and its affiliates.

36.     The local and regional delivery vendors, such as Defendant SER, provide delivery services for DHL at one or more of DHL's ServicePoint locations through and by the use of Courier Drivers, such as Plaintiff.

37.     Courier Drivers for the local and regional delivery vendors, such as SER, exclusively transport DHL packages to DHL customers.

38.     Defendant SER operates out of a DHL-controlled ServicePoint located in San Antonio, Texas.

39.     Defendant DHL provides its local and regional delivery vendors, such as SER, with DHL-branded materials including, without limitation: DHL-branded uniforms, DHL-branded badges, DHL-branded vehicles, and handheld scanning devices.

40.     Courier Drivers, such as Plaintiff and members of the proposed Collective, are required to use DHL-provided handheld scanning devices in order to scan packages.

41.     DHL has the ability to track the location and delivery activity of Courier Drivers, such as Plaintiff and members of the proposed Collective, through their use of the handheld scanning devices provided by DHL.

42.     DHL oversees and controls the work activities, work schedules, conditions and management of Courier Drivers, such as Plaintiff.

43.     DHL assigns and provides routes to local and regional delivery vendors, such as SER.

44.     Courier Drivers for the local and regional delivery vendors that DHL utilizes, such as Defendant SER, are required to wear DHL-branded shirts while making deliveries.

45.     As required by DHL, Courier Drivers for the local and regional delivery vendors, such as SER, must drive a DHL-branded vehicle while transporting and delivering DHL packages.

46.     The vehicles that Courier Drivers operate are branded with DHL's logo (as seen below):



47.     When Courier Drivers present themselves to DHL customers, they are identifiable as DHL associates.

48.     At all relevant times that DHL has been affiliated with and/or operated with SER, with respect to Plaintiff and other similarly-situated employees, DHL and SER have acted as the "joint employers" of Plaintiff and other similarly-situated employees.

49.     Throughout their employment with Defendants, Courier Drivers are required to comply with DHL's operational procedures and in meeting DHL's work expectations.

50.     Although DHL does not directly pay Courier Drivers, its policies and expectations regarding payment and delivery goals dictated the delivery vendors' ability to pay the Courier Drivers for their overtime work.

51.     Plaintiff Hernandez was hired in or around April 2018 and worked as a Courier Driver for Defendants until August 2019 in DHL's ServicePoint facility in San Antonio, TX, delivering packages on behalf of DHL.

## The Nature of Plaintiff and Other Courier Drivers' Work

52.     The nature of the work performed by Courier Drivers is similar and standardized at each of the DHL ServicePoints where local and regional delivery vendors provide services for DHL.

53.     The nature of the work performed by Courier Drivers is controlled and directed by both the local and regional delivery vendors and DHL.

54.     Plaintiff Hernandez and other Courier Drivers began their shifts once they arrived at the DHL ServicePoint.

55.     Plaintiff and other Courier Drivers were regularly required to report to the DHL ServicePoint at approximately 6:00 am on Monday mornings.

56.     Plaintiff and other Courier Drivers were regularly required to report to the DHL ServicePoint at varying times on all other weekday mornings, excluding Monday.

57.     On a frequent basis, the planes utilized to transport the DHL packages to the DHL ServicePoint would arrive after the time the Courier Drivers were instructed to report to work. When the plane was late, Plaintiff and Courier Drivers were instructed to refrain from clocking-in until the plane arrived.

58.     When the plane was late, Plaintiff and other Courier Drivers would be instructed to utilize the time to map out their routes by inputting each delivery address into their scanner. This work was performed off-the-clock and was therefore uncompensated.

59.     Plaintiff and other Courier Drivers were regularly scheduled to work five (5) and six (6) days per week.

60.     Plaintiff and other Courier Drivers sometimes worked up to seven (7) days per week.

61.     Upon information and belief, Plaintiff and other Courier Drivers were required to complete all assigned routes regardless of length of shift.

8

62.     Plaintiff regularly worked more than forty (40) hours per week. Plaintiff observed that other Courier Drivers routinely worked similar hours.

63.     On average, Plaintiff delivered between approximately 50 and 140 DHL packages per shift. Plaintiff observed that other Courier Drivers routinely delivered a similar number of packages.

64.     Defendants unilaterally selected the parcels and the quantity to be delivered. Plaintiff and other Courier Drivers could not reject delivery assignments.

65.     Plaintiff observed that other Courier Drivers routinely worked similar schedules. Defendants were not only aware of and permitted this practice, but the work schedules and conditions imposed by Defendants effectively required this practice.

66.     Plaintiff and other Courier Drivers are non-exempt for overtime purposes.

**Defendants Failed to Pay Courier Drivers Properly**

67.     Plaintiff and other Courier Drivers regularly worked more than forty (40) hours per week.

68.     Plaintiff worked up to 46 hours per week. Plaintiff observed that other Courier Drivers routinely worked a similar number of hours per week.

69.     Plaintiff and other Courier Drivers regularly worked five (5) or more days per week.

70.     Defendants did not pay Plaintiff and other Courier Drivers for all hours worked in excess of forty (40) hours in a workweek and did not pay proper overtime premiums.

71.     During the course of Plaintiff's employment, Plaintiff routinely worked through his meal break period without compensation due to the sheer volume of deliveries assigned to him and in order to meet the work expectations of Defendants. Plaintiff was additionally unable to take short rest breaks throughout his workday in order to keep up with the work demands imposed on

him. Plaintiff observed that other Courier Drivers were also unable to take breaks in order to meet Defendants' work expectations.

72.    Plaintiff and other Courier Drivers were not provided meal breaks. Accordingly, Plaintiff routinely worked without breaks and without proper pay. Defendants were not only aware of and permitted this practice, but the work schedules and conditions imposed by Defendants effectively required this practice.

73.    As a result of the heavy workload and grueling schedules imposed by Defendants, Plaintiff and other Courier Drivers were not able to take meal breaks.

74.    Despite Plaintiff and other Courier Drivers' inability to take meal breaks, Defendants automatically deducted thirty (30) minutes for a meal break from each shift worked – regardless of whether Plaintiff and other Courier Drivers took a break during the workday.

75.    Defendants were aware that Plaintiff and other Courier Drivers worked more than forty (40) hours per week and that Plaintiff and other Courier Drivers were not properly compensated for working through their breaks.

76.    Defendants' pay policy, in which Plaintiff and other Courier Drivers are not properly compensated for all time worked, does not comply with the requirements of the Fair Labor Standards Act.

77.    Defendants did not pay Plaintiff and other Courier Drivers for all hours worked, as required by law.

<u>**The Failure to Properly Pay Courier Drivers Is Willful**</u>

78.    Defendants' actions in violation of the FLSA were or are made willfully in an effort to avoid liability under the FLSA.

79.     Even though the FLSA requires overtime premium compensation for all hours worked over 40 per week, Defendants do not pay Courier Drivers, such as Plaintiff, compensation for all hours worked.

80.     Defendants knew, or absent their own recklessness, should have known, that the Courier Drivers were entitled to compensation for all time worked.

81.     Defendants have failed to pay Plaintiff and other Courier Drivers for all overtime compensation owed.

82.     By failing to pay all the compensation owed to Plaintiff and other Courier Drivers, Defendants have acted willfully and with reckless disregard of clearly applicable FLSA provisions.

83.     Defendants have not made good faith efforts to comply with the FLSA.

## COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

84.     Plaintiff Hernandez brings this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Collective defined above.

85.     Plaintiff Hernandez desires to pursue his FLSA claims on behalf of any individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

86.     Plaintiff and the FLSA Collective are "similarly situated," as that term is used in 29 U.S.C. § 216(b), because, *inter alia*, all such individuals worked pursuant to Defendants' previously described common pay practices and, as a result of such practices, were not paid for all hours worked and were not paid the full and legally mandated overtime premium for hours worked over forty (40) during the workweek. Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendants' common compensation, timekeeping and payroll practices.

87.     Specifically, Defendants failed to compensate Plaintiff for all hours worked and failed to pay overtime at time and a half (1½) the employee's regular rate as required by the FLSA

for all hours worked in excess of forty (40) per workweek.

88.     The similarly situated employees are known to Defendants and are readily identifiable and may be located through Defendants' business records and the records of any payroll companies Defendants use.

89.     Defendants employ many FLSA Collective Members throughout the United States. These similarly situated employees may be readily notified of the instant litigation through direct means, such U.S. mail and/or other appropriate means, and should be allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their similar claims for overtime and other compensation violations, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

## COUNT I
### Violation of the FLSA: Failure to Pay Overtime
### (On Behalf of Plaintiff and the FLSA Collective)

90.     All previous paragraphs are incorporated as though fully set forth herein.

91.     The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which he is employed. *See* 29 U.S.C. § 207(a)(1).

92.     Defendants are subject to the wage requirements of the FLSA because Defendants are employers under 29 U.S.C. § 203(d).

93.     At all relevant times, Defendants were "employers" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

94.     During all relevant times, Plaintiff and Collective Members were covered employees entitled to the above-described FLSA protections. *See* 29 U.S.C. § 203(e).

95.     Plaintiff and Collective Members are not exempt from the requirements of the

FLSA.

96.     Plaintiff and Collective Members are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

97.     Defendants' compensation scheme applicable to Plaintiff and Collective Members failed to comply with either 29 U.S.C. § 207(a)(1) or 29 C.F.R. § 778.112.

98.     Defendants knowingly failed to properly compensate Plaintiff and Collective Members for all hours worked when they worked in excess of forty (40) hours per week, including by failing to pay proper overtime premiums at a rate of one and one-half (1 ½) times their regular hourly wage, in violation of 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

99.     Defendants also failed to create, keep, and preserve accurate records with respect to work performed by the Plaintiff and Collective Members sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

100.    In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

101.    Pursuant to 29 U.S.C. § 216(b), employers such as Defendants, who intentionally fail to pay an employee wages in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks the following relief on behalf of himself and all others similarly situated:

a. An order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b);

b. Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Collective members;

c. Back pay damages (including unpaid overtime compensation, unpaid spread of hours payments and unpaid wages) and prejudgment interest to the fullest extent permitted under the law;

d. Liquidated damages to the fullest extent permitted under the law;

e. Litigation costs, expenses and attorneys' fees to the fullest extent permitted under the law; and

f. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury for all issues of fact.

Dated: November 23, 2021

Respectfully submitted,

/s/ Shanon J. Carson
Shanon J. Carson
Camille Fundora Rodriguez, *pro hac vice forthcoming*
Alexandra K. Piazza, *pro hac vice forthcoming*
Daniel F. Thornton, *pro hac vice forthcoming*
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.: (215) 875-3000
Fax: (215) 875-4620
scarson@bm.net
crodriguez@bm.net
apiazza@bm.net
dthornton@bm.net

*Attorneys for Plaintiff and the Proposed Collective*

14